IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MARK ROBERT L.

              Plaintiff,

                              Civil Action No.
                              1:17-CV-0142 (DEP)

     v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

MARK ROBERT L., *Pro se*
780 Youngs Corners Road
Amsterdam, NY 12010

FOR DEFENDANT:

HON. GRANT C. JAQUITH        FERGUS J. KAISER, ESQ.
United States Attorney for the     JOSHUA L. KERSHNER, ESQ.
Northern District of New York     Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiff Mark Robert L., who is proceeding *pro se*, has commenced

this action pursuant to 42 U.S.C. § 405(g), challenging a determination by the Acting Commissioner of Social Security ("Commissioner"), finding that he was not disabled at the relevant times and thus is ineligible to receive disability insurance benefits ("DIB") pursuant to Title II the Social Security Act. In his brief, which was prepared by his now-deceased counsel, plaintiff argues that the administrative law judge ("ALJ") who heard and decided the matter failed to consider the impact of migraine headaches on his ability to work, and selectively relied upon certain opinions of plaintiff's treating physicians, while disregarding more limiting portions of their medical source statements.

Having carefully reviewed the record that was before the agency and applied the requisite deferential standard, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, for the reasons that follow, the Commissioner's determination is affirmed, and plaintiff's complaint is dismissed.[1]

---

[1]     This matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c) and General Order No. 18 of this court. *See* Dkt. No. 4.

I.     BACKGROUND

Plaintiff was born in August 1966, and is currently fifty-two years old. Administrative Transcript at 80, 92, 286, 297.[2] At the time of his alleged disability onset date of January 1, 2012, plaintiff was forty-five years of age. AT 92, 286. Plaintiff, who is single and does not have any biological children, lives in a house that he shares with a friend. AT 92-93, 102. He graduated from high school and took vocational classes in the field of automotive mechanics. AT 93.

Before being laid off from his job as a sales consultant with an automobile dealership, plaintiff last worked in January 2012. AT 94. Prior to that, plaintiff spent his career in automotive sales and service, at one point owning his own used car dealership.[3] AT 96-97.

Plaintiff's medical records reflect that he suffers from both physical and mental impairments, including, *inter alia*, lumbar degenerative disc disease and degenerative joint disease, chronic obstructive pulmonary disease ("COPD"), left shoulder arthritis status post-surgery, and affective

---

[2]     The administrative transcript, which consists of a compilation of medical records and other evidence that was before the agency at the time of its determination in this matter, and was filed by the Acting Commissioner on June 29, 2017, Dkt. No. 9, will be hereinafter cited as "AT ___."

[3]     Plaintiff's medical records also contain passing references to his ownership of "private poker club." *See, e.g.*, AT 519, 646.

disorder. Physically, he experiences daily, constant lower back pain that radiates into his right leg and causes tenderness to palpitation, spasms, and stiffness. AT 97-101; *see* AT 1276 ("single level degenerative disc and joint disease at L4-5 producing mild degrees of central and forminal stenosis"). Plaintiff has been seen by an orthopedic physician and a pain management doctor, has engaged the services of a physical therapist, and has undergone lumbar medial branch block injections and lumbar epidural steroid injunctions. AT 97-101; *see* AT 407, 419-25, 655-57, 1019. Plaintiff's back pain is generally managed with the use of hydrocodone as needed. AT 97-99; *see* AT 1035, 1147.

Orthopedist Gerald Ortiz ("Dr. Ortiz")[4] performed left shoulder surgery on plaintiff on November 1, 2013, as well as left carpal and cubital tunnel releases on December 3, 2014. AT 106-07; *see* AT 990-91, 1133-34. Plaintiff described his left shoulder as being "a lot better" since the surgery, with only occasional pain and limited left hand mobility. AT 106-07. However, plaintiff testified that as a result of those interventions, he would be unable to lift anything heavier than a coffee cup from overhead. *Id.* At the time of the hearing, plaintiff anticipated that he would be

---

[4]     Both ALJ Farrell and plaintiff refer to Dr. Gerald Ortiz as "Dr. Gerald." *See* AT 78; *see also* Dkt. No. 12 at 1.

undergoing a right carpal tunnel release in the future. AT 107; *see e.g.*, AT 355 (noting the presence of bilateral mild carpal tunnel syndrome).

When ALJ Terence Farrell observed during the hearing that plaintiff was "coughing a lot" and had used an inhaler, plaintiff responded that it was a normal day for him. AT 107-09. Plaintiff described his breathing problems as lifelong, dating back to a tracheotomy that he had as an infant, and his issues with COPD are well-documented in his records. AT 97; *see* AT 356, 583 ("Patient with long standing history of COPD."), 593-94. When plaintiff has a "coughing episode," it can result in a loss of oxygen, which makes him feel as though he might "black out." AT 109-110. Plaintiff has used several different types of medication to manage his respiratory symptoms, and at the time of the hearing he was using Ventolin, Symbicort, and Spiriva. AT 101-02; *see* AT 593-600. Plaintiff is also a smoker, and smokes anywhere from "less than a pack" to two packs of cigarettes per day. AT 111-12, 301, 322, 347.

In addition to his physical conditions, plaintiff also suffers from an affective disorder, which manifests itself as depression and anxiety. Plaintiff receives mental health treatment from St. Mary's Healthcare, including from Jessica Terwilliger, Psy. D. ("Dr. Terwilliger"). AT 102, 110-11, 603-54. Although plaintiff is taking Remeron, he believes that despite

the use of that medication, his symptoms interfere with his ability to work. AT 102-03.

According to plaintiff's testimony, he is frequently unable to get out of bed and otherwise tend to his basic hygiene needs. AT 103-07. Despite that testimony, the record reflects that he partakes in a fairly wide range of daily activities, including light cooking, watching television, using his laptop computer, sitting on the deck of his house, caring for his friend's two dogs, light housekeeping, and occasional driving. AT 103-07; *but see* AT 347 (noting that plaintiff "can do some cooking, laundry, and shopping" and that he can "shower, bathe, and dress"). His medical records also indicate that he engages in grocery shopping, working in his yard, mowing his lawn, light mechanical work, and chopping, lifting, and moving wood. AT 8, 22, 235-36, 317, 321, 361, 599. Plaintiff's other hobbies and interests include watching television, playing poker, fishing, playing football, and drag racing. AT 236, 361, 520.

II.     PROCEDURAL HISTORY

A.     Proceedings Before the Agency

Plaintiff applied for DIB pursuant to Title II of the Act on July 13, 2013.[5] AT 197-202; *see* AT 203-05. In his application, plaintiff alleged a

---

[5]     On January 18, 2017, the Social Security Administration ("SSA") published a

disability onset date of January 1, 2012. *Id.* Plaintiff's claim was initially denied on November 6, 2013. AT 126.

On April 21, 2015, ALJ Farrell conducted a hearing at which both plaintiff and a vocational expert testified. AT 87-125. On July 25, 2015, ALJ Farrell issued a written decision in which he found that plaintiff was not disabled at the relevant times and therefore not entitled to the benefits sought. AT 73-86.

After determining that plaintiff was insured for disability benefits under Title II through December 31, 2014, ALJ Farrell went on to apply the well-settled, five-step sequential test for determining disability.[6] AT 73-86. At step one, he concluded that plaintiff did not engage in substantial gainful activity between January 1, 2012, his alleged onset date, and December 31, 2014, his date of last insured. AT 75. ALJ Farrell then concluded, at step two, that plaintiff suffers from several severe impairments which limit his ability to perform basic work activities,

---

final rule that changed the protocol evaluation of medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416). Those new regulations apply only to claims filed with the SSA on or after March 27, 2017. Because plaintiff's claims were filed prior to that date, to the extent that the regulations are cited, the court is referring to the versions of the regulations that were in effect prior to March 27, 2017.

[6]     That test is described further on in this opinion. *See* pp. 13-15, *post.*

including lumbar degenerative disc disease and degenerative joint disease, COPD, left shoulder arthritis status-post surgery, and an affective disorder. *Id.* ALJ Farrell further noted that plaintiff suffered from several non-severe impairments, including sleep apnea, hypertension, gastroesophageal reflux disease ("GERD"), and a history of bilateral carpal tunnel and left cubital tunnel syndrome, but found that those conditions did not impose any limitation on plaintiff's ability to perform work-related functions. AT 75-76. At step three, ALJ Farrell concluded that plaintiff's conditions, whether taken alone or in combination, did not meet or medically equal in severity any of the presumptively disabling impairments listed in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. AT 76.

ALJ Farrell next proceeded to survey the available evidence, concluding that despite his conditions, plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work, subject to certain limitations, including that he can "occasionally lift, carry, push, and pull twenty pounds, and can frequently lift, carry, push, and pull ten pounds." AT 76. He further found that plaintiff can occasionally reach overhead with his non-dominant, upper extremity; can stand and walk two hours with some limitations; can sit eight hours in a workday with some

limitations; can occasionally balance, crawl, crouch, stoop, and kneel; can occasionally climb stairs and ramps; and can never climb ladders, ropes, and scaffolds. AT 75-76. ALJ Farrell determined that plaintiff should also avoid concentrated exposure to respiratory irritants. AT 77.

Applying that RFC, ALJ Farrell concluded that plaintiff's RFC prevents him from performing his past, relevant work in automotive sales and service. AT 79-80. At step five, the ALJ consulted the medical vocational guidelines set forth in the regulations ("grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that a finding of no disability would be required under Medical Vocational Rule 202.21 if plaintiff retained the RFC to perform a full range of light work. AT 80. After consulting with a vocational expert to determine the extent of job base erosion resulting from plaintiff's non-exertional limitations, ALJ Farrell concluded that despite his conditions, plaintiff is capable of working in positions available in sufficient numbers in the national economy, including as a final assembler, an order clerk, and a lens inserter, and therefore held that plaintiff was not disabled at the relevant times. AT 80-81.

Upon the denial by the Social Security Administration Appeals Council of plaintiff's request for review of the ALJ's decision on December 9, 2016, the opinion became a final determination of the agency. AT 1-7.

B.    Proceedings Before This Court

Plaintiff commenced this action on February 8, 2017, and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 1, 6. Following the filing by the Commissioner of the administrative transcript of proceedings and evidence before the agency on July 24, 2017, Dkt. No. 9, plaintiff submitted a counseled brief on September 13, 2017, Dkt. No. 12. The Commissioner responded with a brief filed on March 16, 2018, Dkt. No. 20. Under General Order No. 18 of this court, the matter is now considered as having been submitted on cross-motions by the parties for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting

*Richardson*, 402 U.S. at 401). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951; *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.     Disability Determination: The Five Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R.

§§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or his physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

      1.    Whether the ALJ Properly Assessed Plaintiff's Severe Impairments

Plaintiff's medical records contain passing references to headaches or migraines. *See, e.g.*, AT 1028 ("intense headaches"), 1057, 1098, 1110, 1168-69, 1171; *but see, e.g.*, AT 500 ("[d]enies . . . headache"), 539, 564, 682. Plaintiff argues that in arriving at his RFC, ALJ Farrell failed to consider the impact of migraine headaches upon his ability to perform work-related functions, including the documented frequency in which they occur. Dkt. No. 12 at 1, 3-4. The Commissioner counters that although plaintiff sought treatment for headaches between September 2014 and December 31, 2014, his date of last insured, there is no evidence in the record that migraines significantly impact his ability to work. Dkt. No. 20 at

5-6.

At the second step of the sequential evaluation process, an ALJ must decide whether a plaintiff has a severe impairment, which is defined as one that "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The relevant section of the regulations defines the phrase "basic work activities" to include "the abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1521(b). As a result, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r of Soc. Sec.*, No. 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala*, 895 F. Supp 50, 53 (S.D.N.Y. 1995)); *see also McConnell v. Astrue*, No. 03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008). Put another way, the mere presence of a disease or impairment alone, is insufficient to establish disability; instead, it is the impact of that impairment, and in particular any limitations that it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry. *See Rivera v. Harris*, 623 F.2d 212, 215-16 (2d Cir. 1980); *Durgan v. Astrue,* No. 12-CV-279, 2013 WL 1122568, at *3 (N.D.N.Y. Feb. 19, 2013) ("[A] diagnosis alone is insufficient to establish a severe impairment as instead, the

plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities.").

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)); *see Baneky v. Apfel*, 997 F. Supp. 543, 545-46 (S.D.N.Y.1998). At step two, a plaintiff bears the burden to provide medical evidence demonstrating the severity of a condition. 20 C.F.R. § 404.1520(c); *see Bowen v. Yuckert*, 482 U .S. 137, 146 (1987); *see also Desmond v. Astrue*, No. 11-CV-0818, 2012 WL 6648625, at *3 (N.D.N.Y. Dec. 20, 2012) (Bianchini, M.J.) (citing *Miller v. Comm'r of Soc. Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6–7 (N.D.N.Y. July 2008) (Scullin, J.)). If an ALJ finds that one or more of a plaintiff's impairments are severe, any error at step two in rejecting as non-severe other conditions may be harmless if the ALJ continues with " 'the sequential analysis, and does not deny plaintiff's application based on the second step alone.' " *Tryon v. Astrue*, No. 10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (D'Agostino, J.) (quoting *Kemp v. Comm'r of Soc. Sec.*, No. 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).

As the Commissioner correctly observes, plaintiff never argued before the agency that migraines contribute to his disability. In his disability report, plaintiff listed his disabling medical conditions as asthma, COPD, anxiety, and depression. AT 217. In a function report completed by plaintiff on August 26, 2013, he mentioned other conditions, including stress, COPD, and his back condition, but he did not reference headaches. AT 232-43. In support of his application for benefits, plaintiff listed asthma, COPD, major depression, and anxiety as the illnesses, injuries, or conditions that limit his ability to work. AT 200. During the hearing held on April 21, 2015, when asked what conditions limit his ability to work, plaintiff discussed other conditions at length, but made no mention of headaches. AT 97-107. Indeed, migraines are nowhere mentioned in either plaintiff's memoranda to the Appeals Council in support of her request for review, see AT 286-95, or in his complaint in this action, *see* Dkt. No. 1.

It is true that plaintiff's medical records indicate that he began complaining of headaches when he presented to Dr. Jamshaid A. Minhas ("Dr. Minhas") on September 30, 2014. AT 1174-75; *see* AT 1028-29 ("intense headaches"). At that time, Dr. Minhas noted that plaintiff's headaches occurred mostly "in the middle of the night," but that he would

have a steady, mild headache during the day. AT 1174. Although the headaches occurred up to four times per week, they did not result in plaintiff's nausea, sensitivity to light, or sensitivity to sound. *Id.* Moreover, ibuprofen reportedly relieved plaintiff's symptoms. *Id.* Over the course of several months, Dr. Minhas prescribed different prescriptions, including Topamax, Imitrex, and Depakote to relieve plaintiff's headache symptoms. AT 1168-80.

There is no indication whatsoever among the available medical evidence that plaintiff's migraines limit his ability to perform work-related functions. Despite his treatment course, plaintiff has demonstrated, at best, that he has merely treated for and been diagnosed with migraines, which is not sufficient to deem a condition severe. *Tryon*, 2012 WL 398952, at *3. The medical records do not indicate that the migraines, which plaintiff experiences up to four times per week and are steady and mild in nature, impose limitations on his ability to perform basic work functions. *See id.*; *see also Warthan v. Comm'r of Soc. Sec.*, No. 7:16-CV-0036, 2017 WL 79975, at *6 (N.D.N.Y. Jan. 9, 2017) (Suddaby, C.J.). It was plaintiff's burden to establish limiting affects based on his migraine headaches. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). Although plaintiff complained generally of headaches to Dr. Minhas, who was also

treating him for other issues, there is no information in the doctor's treatment notes regarding limitations that resulted exclusively from his migraines. AT 1168-80.

In sum, I find no error in ALJ Farrell's step two analysis. Simply stated, plaintiff has failed to carry his burden of demonstrating the existence of work-related limitations associated with his migraine headaches.[7]

### 2. Whether the ALJ Properly Weighed the Medical Opinions in the Record

In order to evaluate a claim of disability, an ALJ must assess a claimant's RFC. A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.

---

[7]     ALJ Farrell concluded that plaintiff suffered from several severe impairments, including lumbar degenerative disc disease and degenerative joint disease, COPD, left shoulder arthritis status-post surgery, which limited his ability to perform basic work activities. AT 75. Accordingly, as was noted above, because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone, any purported error in failing to consider plaintiff's migraines, which plaintiff did not raise at any point in the proceedings below, was harmless and would not necessitate remand. *Tryon*, 2012 WL 398952 at *3.

Supp. 2d at 150. " 'Ultimately, [a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.' " *Smith v. Comm'r of Soc. Sec.*, No. 5:17-CV-0488, 2018 WL 1684337, at *4 (N.D.N.Y. Apr. 5, 2018) (Suddaby, C.J.) (quoting *Hendrickson v. Astrue*, No. No. 5:11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012)); *see also* SSR 85-15, 1985 WL 56857, at *8 (Jan. 1, 1985). Moreover, the RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587.

The ALJ is tasked with the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. *See Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (D'Agostino, J.) ("[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.' ") (quoting *Galiotti v. Astrue*, 266 F. App'x. 66, 67 (2d Cir. 2008)). However, because an ALJ is not required to strictly adhere to the entirety of one medical source's opinion, the ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision, [because an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. Appx. 53, 56 (2d Cir. 2013) (summary order); *see Kikta v. Comm'r of Soc. Sec.*, No. 5:15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (Baxter, M.J.) (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (summary order)). Consequently, there is no requirement that an ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence. *See, e.g.*, *Crumedy v. Comm'r of Soc. Sec.*, No. 1:16-CV-1261, 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (Suddaby, C.J.); *Florek v. Comm'r of Soc. Sec.*, No. 1:08-CV-0919, 2009 WL 3486643, at *10 (N.D.N.Y. Oct. 21, 2009) (Mordue, C.J., *adopting report and recommendation of* Peebles, M.J.) ("the fact that the ALJ did not accept every limitation indicated by Dr. Payne is not a ground for reversal or remand.").

As the Second Circuit has noted, the plaintiff bears the burden of demonstrating limitations that must be included in an RFC. *Stanton v. Astrue*, 370 F. App'x. 231, 234 (2d Cir. 2010); *Poupore*, 566 F.3d at 306. In this instance, having carefully reviewed the available medical evidence, for the reasons that follow, I conclude that the physical and mental

components of the ALJ's RFC finding are supported by substantial evidence, and plaintiff has failed to carry his burden of demonstrating the existence of more limited restrictions in his ability to perform work-related functions.

1.    The Opinion of Dr. Terwilliger

Plaintiff argues first that ALJ Farrell "selectively relied" upon the opinion of Dr. Terwilliger. Dkt. No. 12 at 1, 4-5. Plaintiff concedes that Dr. Terwilliger found "mostly mild limitations," but argues that ALJ Farrell failed to account for her opinion that plaintiff was moderately limited in the ability to "[a]ccept instructions and respond appropriately to criticism from supervisors." *Id.* (citing AT 1152).

In response, the Commissioner contends that plaintiff fails to explain how the moderate mental limitation would impact the ALJ's decision that plaintiff can perform unskilled work. Dkt No. 20 at 6-7. The Commissioner further argues that there is no requirement that the ALJ accept every limitation contained in a medical opinion. *Id.* at 7-8. In addition, the Commissioner argues to extent that ALJ Farrell's failure to discuss the moderate limitation could be considered an error, that error is harmless because the vocational expert identified two positions capable of being performed by plaintiff, despite that additional limitation. *Id.* at 8-9.

At the outset, Dr. Terwilliger opined that a majority of plaintiff's limitations are mild in nature, including five out of six categories that involve his social interactions. AT 1152. In the sixth category of social interactions, she opined that plaintiff is moderately limited with respect to his ability to, *inter alia,* "[a]ccept instructions and respond appropriately to criticism from supervisors." *Id.*

According to a Function Report, dated August 26, 2013, and completed by plaintiff, he denied having "any problems getting along with family, friends, neighbors, or others," *see* AT 232-42. Dr. Kachigere Krishnappa ("Dr. Krishnappa"), a treating psychologist in the same practice as Dr. Terwilliger, assigned plaintiff a global assessment of functioning ("GAF") score of 65, "which is an indication that treating and examining source believed that that [plaintiff] had only has mild symptoms and some difficulty in social . . . functioning." AT 78 (citing AT 343); *but see* 523 (documenting a GAF score of 52). In addition, Brett T. Hartman, Psy. D. ("Dr Hartman"), a consultative psychologist, opined that plaintiff was only mildly limited in his ability to relate "adequately with others." AT 361; *see also* AT 133 (observing that plaintiff suffered from mild difficulties in social functioning), 135.

Additionally, ALJ Farrell observed that plaintiff was "not entirely

credible" and that his testimony—particularly with respect to his mental health symptoms and limitations—was not well-supported by his reported activities and the evidence contained in his medical record. AT 77. Thus, mindful of plaintiff's less-than-credible testimony, and despite Dr. Terwilliger's opinion that plaintiff had a moderate limitation in one area of his social functioning, the ALJ concluded that opinions of Dr. Krishnappa and Dr. Hartman, as well as plaintiff's own disclosures during the proceedings below, indicated that he was not limited in that respect. ALJ Farrell was entitled to weigh all of the evidence that was available to him and arrive at an RFC finding, and his finding is both consistent with the record as a whole, and supported by substantial evidence.

I note, moreover, that a moderate mental limitation—in this case a moderate limitation on plaintiff's ability to interact with supervisors—does not necessarily equate to a disabling functional restriction that would prevent a plaintiff from performing the basic mental demands required for unskilled work. See *Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (Carter, M.J.) ("moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work) (citing, *inter alia*, *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).

Even to the extent that the ALJ's failure to discuss a single moderate limitation in plaintiff's social functioning could be considered erroneous, any such error is harmless because it would not have altered the outcome in light of the vocational expert's testimony at the hearing. *See, e.g.*, *Davis v. Colvin*, No. 5:12-CV-641, 2013 WL 4812024, at *3 (N.D.N.Y. Sept. 10, 2013) (Sharpe, C.J.); *Jaghamin v. Comm'r of Soc. Sec.*, No. 1:11-CV-1273 (GLS), 2013 WL 1292061, at *7 (N.D.N.Y. Mar. 28, 2013) (Sharpe, C.J.) (citing *Walzer v. Chater*, No. 93-CV-6240, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995)). The vocational expert testified there are three jobs in the national economy that plaintiff can perform, two of which require only limited social interaction: final assembler (identified as DOT 713.687-018), and a lens inserter (identified as DOT 703.687.026).[8] Accordingly, even if the ALJ had accepted the opinion of Dr. Terwilliger that plaintiff was moderately limited in his ability to "[a]ccept instructions and respond appropriately to criticism from supervisors," based upon the vocational expert's testimony, she would nonetheless have found the existence of a substantial number of jobs in the national economy that

---

[8] The *Dictionary of Occupational Titles*, which is published by the United States Department of Labor, "is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work." *Thomas v. Astrue*, No. 3:11-CV-589, 2012 WL 5364275, at *3 n.7 (N.D.N.Y. Sept. 19, 2012).

plaintiff would be able to perform with all of the supported limitations.

In light of the foregoing, I conclude that the ALJ's determination was supported by substantial evidence and that, in any event, any errors in weighing the opinion evidence, are harmless and do not necessitate reversal and remand.

## 2. The Opinion of Physician's Assistant Karen Taft

Plaintiff next argues that ALJ Farrell "selectively relied" upon the opinion of Dr. Ortiz in that he failed to offer any rationale with respect to why he did not accept the portion of that opinion that plaintiff could "never bend or stoop." Dkt. No. 12 at 1, 5-6 (citing AT 1024). The Commissioner responds that the opinion was not authored by Dr. Ortiz, but instead a physician's assistant ("PA") who is not an acceptable medical source, and in any event, the ALJ nonetheless properly weighed all of the available evidence and arrived at an RFC that was consistent with the entire record. Dkt. No. 20 at 11-13.

Preliminarily, as the Commissioner noted, the opinion on which plaintiff bases his argument was not authored by Dr. Ortiz; rather, the opinion was authored by a PA Karen Taft, who is supervised by Dr. Ortiz. AT 1018-25. In assessing whether a PA is considered an acceptable medical source, the filing date of plaintiff's claim is pivotal as it determines

which set of regulations control in light of the new rules. *See* p. 6, n. 5, *ante.* In particular, in claims with a filing date on or after March 27, 2017, licensed physicians assistants "for impairments within his or her licensed scope of practice" are considered among the acceptable medical sources. 20 C.F.R. § 404.1502. Prior to that date, the governing regulations provided that although an ALJ may consider evidence from a PA, such a provider is not an "acceptable medical source" and therefore cannot constitute a "treating source." *Evans v. Colvin*, 649 F. App'x. 35, 38-39 (2d Cir. 2016); see 20 C.F.R. § 404.1513(a), (d) (2007); *see Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("In weighing the opinions of 'other sources', the ALJ must use the same factors for the evaluation of the opinions from 'acceptable medical sources' enumerated in [the regulations]."). Because plaintiff applied for benefits on July 13, 2013, *see* AT 197-205, the previous version of the regulations dictate that PA Taft's opinion is not that of a "treating source."

PA Taft's report, which is in the form of a multiple impairment questionnaire dated March 4, 2014, reflects her opinion that plaintiff suffers from lumbar degenerative disc disease, which includes moderate pain, tenderness to palpitation of the right lumbar paraspinal muscles with spasm, and lumbar spine stiffness. AT 1018. Based upon that condition,

PA Taft determined that plaintiff was subject to certain limitations,

including the complete inability to both bend and stoop.[9] AT 1024. In that

respect, ALJ Farrell gave "great weight" to the limitations contained in PA

Taft's opinion—which he incorrectly attributed to Dr. Ortiz—and stated:

> Though it is based only on an assessment of the
> lower back, the claimant's lower back problem
> appears to be the claimant's biggest obstacle to
> working. Review of the evidence finds details of his
> assessment of lumbar degenerative disc disease for
> which the claimant has endured lumbar medial
> branch block injections. The claimant is also known
> to have tenderness to palpation, spasms, and
> stiffness. Diagnostic evidence is also reported to
> show degenerative disc disease and mild central
> and foraminal stenosis. Dr. [Ortiz] also considered
> the claimant's pain levels and believed it would
> cause interference with high stress jobs, which is
> also incorporated into established residual
> functional capacity when limiting to the claimant to
> simple and unskilled work.

AT 78-79 (internal citations omitted).

Although ALJ Farrell gave slightly less weight to the opinion of Dr.

Kautilya Puri, a consultative examiner who found "only mild limitations,"

---

[9]     According to Social Security Ruling ("SSR") 85-15, stooping is among the "progressively more strenuous forms of bending parts of the body." SSR 85-15, 1985 WL 56857, at *7. "If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." *Id.* SSR 96-9p clarifies by explaining that a *complete* inability to stoop would erode the unskilled sedentary occupational base such that "a finding that the individual is disabled would usually apply." SSR 96-9P, 1996 WL 374185, at *8 (Jul. 2, 1996). However, a "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id.*

*see* 79, Dr. Puri's physical examination revealed "flexion/extension to 70 degrees and lateral rotary movements 10 degrees with mild local tenderness." AT 348. In addition, on each occasion that plaintiff was examined by Jason H. Steindler, DO, he documented that plaintiff was "[m]ildly limited extension with no discomfort. Mildly limited flexion with no pain on extremes. Mildly limited rotation with no pain." *See, e.g.*, AT 421, 494, 660. Physical therapy notes indicate that plaintiff's flexion was sixty-seven degrees and extension was thirteen degrees. AT 568. On July 22, 2014, Dr. Paul Socico noted that "[w]th regard to h[is] lumbar range of motion, he can achieve pretty good flexion, to about 90 [degrees]," but that "[e]xtension beyond midline exacerbates his current pain." AT 1041. In addition, plaintiff's own testimony indicated that his back would "hurt more" if he was "bending . . . for a long time." AT 100

As was previously indicated, the fact that ALJ Farrell did not accept every limitation is not a ground for reversal or remand. *See Florek v. Comm'r of Soc. Sec.*, No. 1:08-CV-0919, 2009 WL 3486643, at *10 (N.D.N.Y. Oct. 21, 2009) (Mordue, C.J.); *see also Crumedy*, 2017 WL 4480184, at *5. The ALJ was entitled to weigh all of the evidence available to him and arrive at an RFC finding that was consistent with the record as a whole. The finding that plaintiff's condition limits him to only occasionally

stooping is supported.

I note, moreover, any perceived error is in this regard would also be harmless, based on the vocational expert's testimony at the hearing. *See, e.g.*, *Davis*, 2013 WL 4812024, at *3; *Walzer*, 1995 WL 791963, at *9. At the hearing, the vocational expert identified three jobs in the national economy that plaintiff could perform, none of which, according to the DOT, involve stooping: final assembler (identified as DOT 713.687-018), lens inserter (identified as DOT 703.687.026), and order clerk, food and beverage (identified as DOT 209.567-014). Accordingly, even if the ALJ had accepted that plaintiff was unable to stoop, as opined by PA Taft, there would nonetheless be a substantial number of jobs in the national economy that plaintiff would be able to perform with all of the supported limitations.

I conclude that the ALJ's RFC determination was supported by substantial evidence and that, in any event, any claimed errors in weighing the opinion evidence are harmless and do not necessitate reversal and remand.

IV.    SUMMARY AND ORDER

Having carefully considered plaintiff's arguments and reviewed the available evidence, I find that the ALJ applied the proper legal principles

and determined plaintiff's RFC, and that his finding of no disability is supported by substantial evidence in the record. Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be DENIED, and that the Commissioner's cross motion for judgment on the pleadings (Dkt. No. 20) be GRANTED, the Acting Commissioner's determination be AFFIRMED, and judgment be entered DISMISSING plaintiff's complaint in this action; and it is further

ORDERED that the clerk of the court serve a copy of this decision and order upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     September 20, 2018
           Syracuse, New York